Filed 8/18/21  In re E.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.R., a Person Coming Under the Juvenile Court Law. | B308631 |
| | (Los Angeles County Super. Ct. No. 19CCJP04241C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

M.C. (Mother), who has a long history of struggling with substance abuse, appeals from a juvenile court order assuming dependency jurisdiction over her one-year-old[1] son E.R. (Minor) after Mother tested positive for alcohol and marijuana and missed a couple of court-ordered drug tests. We are asked to decide whether substantial evidence supports the juvenile court's jurisdiction finding.

## I. BACKGROUND

### A. *Prior Pertinent Dependency History*

In 2003, a juvenile court terminated Mother's parental rights over two daughters due to Mother's substance abuse; among other things, the younger of the two girls was exposed to cocaine in-utero. A year later, a third daughter was declared a dependent of the juvenile court based on the abuse and neglect of her older sisters; the court denied Mother reunification services and the girl was ultimately adopted by relatives in Texas. Fourteen years later, in 2018, the court terminated Mother's parental rights over three other children due, in part, to Mother's abuse of methamphetamine and marijuana while pregnant with the youngest of the three children and while caring for the two older children.

In April 2019, while pregnant with the child that is the subject of this dependency appeal, Mother was arrested for

---

[1] This was Minor's age at the time of the jurisdiction hearing. Minor was two months old at the time dependency proceedings were initiated.

Minor's father is not a party to this appeal, because the allegations asserted against him were not sustained.

methamphetamine possession. Two months after her arrest, the police discovered a methamphetamine pipe with residue inside of it in the bedroom Mother shared with her children.

Shortly thereafter, the Los Angeles County Department of Children and Family Services (the Department) filed a petition alleging Minor's two youngest siblings, J.R. and A.R.,[2] were at risk of serious harm as a result of Mother's history of substance abuse, current abuse of marijuana, and the abuse and neglect suffered by Mother's six older children. The juvenile court sustained the petition, finding Mother's history of drug abuse and evidence of recent relapses (entering two treatment programs in the two years immediately preceding the filing of the petition but completing only one) posed a substantial risk to J.R. and A.R. The juvenile court ordered both children removed from their parents' custody due to Mother's "high risk of relapse." This court subsequently affirmed the juvenile court's ruling in an unpublished opinion holding substantial evidence supported the jurisdiction finding. (*In re J.R.*, *et al.* (December 29, 2020, B304328) [nonpub. opn.].)

### B. *These Dependency Proceedings*

In November 2019, less than a month after Minor was born, the Department received a referral alleging general neglect of Minor. In response, a Department social worker interviewed Mother at a home she shared with her former mother-in-law and two of her adult children (including a son who admitted to using marijuana "regularly on a daily basis"). Mother admitted to past

---

[2]     At the time of the petition's filing, J.R. and A.R. were, respectively, two and a half years old and 15 months old.

substance abuse but claimed she had been sober for the last five to six years and insisted court-ordered drug and alcohol tests had been negative.

The Department filed a dependency petition in January 2020. The petition alleged eight counts against Mother, one under Welfare and Institutions Code section 300, subdivision (a) (risk of serious physical harm inflicted non-accidentally),[3] four under subdivision (b)(1) (substantial risk of serious physical harm from a parental failure or inability to protect), and three under subdivision (j) (risk of abuse or neglect when a sibling has been abused or neglected). The b-3 count in the petition averred Minor was endangered by Mother's current abuse of marijuana and her 17-year history of substance abuse and child welfare proceedings. The j-2 count asserted Minor was at risk as a result of Mother's past and current substance abuse and Mother's prior neglect of his older siblings.

At the initial detention hearing, the juvenile court, over the Department's objection, allowed Minor to remain at home with Mother contingent on Mother "continuing to test and test clean." The court cautioned, however, that Mother must be vigilant because taking care of an infant is stressful and, "[a]s everyone knows who is in recovery, stress can cause relapse."

Following the filing of the petition, Mother was re-interviewed by a Department investigator. Mother told the investigator that she had been sober "for years" and claimed she was currently enrolled in outpatient programs only to help maintain that sobriety. (Mother's description of her recent drug

---

[3] Undesignated statutory references that follow are to the Welfare and Institutions Code.

4

history was at odds with a statement she gave to the Department just a few months earlier in connection with the investigation into J.R. and A.R.'s well-being; in that earlier statement, Mother indicated she had relapsed twice within the last two years and had entered treatment programs following each relapse.) Mother also admitted her adult son's marijuana use made her recovery from substance abuse more difficult, but she maintained she was not worried about relapsing; in her view, she had too much to lose.

In advance of the jurisdiction and disposition hearing, the Department reported on Mother's recent drug testing. The Department advised Mother had tested negative for substance use throughout her pregnancy with Minor and there were no records of Minor being born with a positive toxicology. After Minor's birth, between November 2019 and January 2020, Mother had 13 negative test results and no positive test results. From June through October 2020, Mother had 14 negative test results but did not submit to testing three times—and one of those tests was scheduled just a week before the jurisdiction hearing that would later take place in November 2020.[4] In addition, Mother tested positive on two occasions during this same time period: once for alcohol in July 2020, and once for marijuana in late September 2020 (which was about a month before the jurisdiction hearing). Mother attributed the positive alcohol test to apple cider vinegar pills which she was taking as a

---

[4] Mother offered no explanation for her failure to appear for two of these missed tests and the third missed test did not go forward apparently because Mother was unable to produce identification at the testing site.

diet aid. Mother said she had "no idea" how she could have tested positive for marijuana.

In advance of the jurisdiction hearing, the Department conceded some of the counts in the dependency petition should be dismissed. But the Department urged the juvenile court to sustain the aforementioned b-3 (substantial risk from substance abuse) and j-2 (sibling abuse or neglect) counts, to take dependency jurisdiction over Minor, and to keep Minor placed in Mother's home albeit under the Department's supervision.

At the November 2020 jurisdiction hearing, the court admitted Department reports concerning Minor and his siblings J.R. and A.R. in evidence and sustained petition counts b-3 and j-2.[5] Explaining its ruling, the court stated Mother's long history of substance abuse and evidence of recent relapses posed a substantial risk to Minor's well-being.[6] The court dismissed the remaining counts in the petition.

_____

[5] Although the court sustained the b-2 count alleging a substantial risk of serious harm attributable to Mother's substance abuse, the court struck language in that count stating Mother was "a current abuser of marijuana." The court explained it was striking that language because Mother's positive test for a "very small amount" of marijuana did not warrant characterizing Mother as an "abuser" of that drug.

[6] The court was particularly concerned about Mother's recent positive tests for alcohol and marijuana, her inability to offer plausible explanations for either of those test results, and her misrepresentations about her substance use. The court stated: "[W]hen a person has a long history of substance abuse, relapse is always a risk. Relapse is, basically, one bad decision away. And . . . denial is kind of a powerful force that can really pull a person back into relapse. [¶] When the case—the report that

## II.  DISCUSSION

It is undisputed that Minor's siblings, including J.R. and A.R. as discussed in our December 2020 opinion, have been found by a juvenile court to have been abused or neglected within the meaning of section 300, subdivision (b)(1).  The juvenile court asserted jurisdiction over Minor under subdivision (j) of section 300 in addition to subdivision (b)(1), so the only question we must decide is whether there is substantial evidence of a substantial risk that Minor would be abused or neglected within the meaning of section 300, subdivision (b)(1) as so many of his siblings had been.  (*In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*) ["Subdivision (j) applies if (1) the child's sibling has been abused or neglected as defined in specified other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions"]; see also *In re R.T.* (2017) 3 Cal.5th 622, 633.)  As we will explain, there is.

"'[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b),

---

was filed in February of this year, [Mother] was saying she'd been clean and sober for four years, but then that turned out not to be true.  And so, you know, [Mother] has kind of gone back and forth in terms of just how honest she is with herself and other people about her substance abuse history.  [¶] . . . [¶]  [I]f someone is really trying to be clean and sober, there's kind of a bright line.  Sometimes people are tempted to think, 'Well, I can still be clean and sober and smoke weed a little bit.'  But as people . . . discuss in recovery programs all the time, once you step over that line, you are at a huge risk of relapse because you've taken that first step."

(d), (e), or (i).  Subdivision (j) *does not* state that its application is limited to the risk that the child will be abused or neglected *as defined in the same subdivision* that describes the abuse or neglect of the sibling.  Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) *or* (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.'  [Citation.]

"Unlike the other subdivisions, subdivision (j) includes a list of factors for the court to consider: 'The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.' (§ 300, subd. (j).)  'The "nature of the abuse or neglect of the sibling" is only one of many factors that the court is to consider in assessing whether the child is at risk of abuse or neglect in the family home.  Subdivision (j) thus allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions.  [¶]  The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j).  The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'  [Citation.]"  (*I.J.*, *supra*, 56 Cal.4th at 774.)

8

Adequate evidence establishes Minor was at substantial risk of suffering abuse or neglect in the same manner as his siblings, i.e., from substance abuse by Mother. Minor was relatively close in age to J.R. and A.R., there was nothing about the gender of the children that suggested the risk to Minor was reduced, and Mother's mental condition was the same, or worse—given her denial of any drug use in the prior years—as it was at the time of the jurisdiction finding regarding J.R. and A.R. It was also undisputed Mother was arrested for possession of methamphetamine while pregnant with Minor and shortly thereafter a methamphetamine pipe (with residue still inside) was found in the bedroom she shared with J.R. and A.R. Furthermore, Mother advanced at least one explanation of a recent positive test that the juvenile court appropriately concluded was not credible, and there were also a couple missed drug tests in the months preceding the jurisdiction hearing despite the juvenile court's admonishment at the detention hearing that she test and test clean. When combined with Minor's very young age and Mother's repeated, protracted difficulties with substance abuse, this is sufficient evidence to support the juvenile court's jurisdiction finding. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [substance abuse, which often renders parents unable to adequately supervise and care for a child, poses an inherent risk to children of "'tender years'"].)

To be sure, Mother's record of multiple negative drug tests since Minor's birth was some evidence that the requisite risk of harm did not exist. But that does not defeat the substantial evidence that does support the juvenile court's decision, especially when tests not long before the jurisdiction hearing

revealed alcohol and marijuana use—which, in light of Mother's history and her denial of any use at all, the juvenile court appropriately viewed as a gateway to an even more damaging relapse. (*In re M.R.* (2017) 8 Cal.App.5th 101, 108 ["[W]e do not consider whether there is evidence from which the juvenile court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw"].) Moreover, even putting Mother's two positive tests out of mind, the juvenile court could reasonably conclude that the relatively short time in which Mother was mostly testing negative provided no adequate assurance that the risk to Minor from substance abuse by Mother had adequately dissipated. (See, e.g., *In re J.C.* (2014) 233 Cal.App.4th 1, 7 [seven months of sobriety insufficient to show parent was not at risk of relapse]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [mother's 372 days of sobriety insufficient to show changed circumstances in light of her many years of substance abuse and previous relapses].)

DISPOSITION

The finding of jurisdiction is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.